Arlo CASSELMAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 35A04–9102–CR–36.

Court of Appeals of Indiana, Fourth District.

Dec. 10, 1991.

John W. Bailey, Stephen J. Michael, Matheny, Michael, Hahn & Bailey, Huntington, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Sue A. Bradley, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Presiding Judge.

After a bench trial, the judge convicted Arlo Casselman (Casselman) of two counts of child molesting and one count of sexual battery. IND.CODE 35-42-4-3(c), (d); IC 35-42-4-8. He received concurrent sentences of four, one and one-half, and one and one-half years. Casselman directly appeals his conviction of fondling S.S., a three year old girl, based on witness incompetency, improper admission of a videotaped statement, and insufficient evidence.

We affirm.

Casselman raises three restated issues for our review:

1. whether the trial court abused its discretion in finding S.S., the three year old protected person, competent to testify;

2. whether the trial court properly admitted the videotaped statement of S.S.; and

3. whether the evidence was sufficient to sustain the defendant's conviction.

Casselman lived with D.S., her little girl, S.S., and S.R., D.S.'s sister, in May of 1990. S.S. was born on August 8, 1987, and S.R. was born on January 6, 1977. Casselman was home alone with these young girls on various Wednesdays when D.S. worked.

D.S. and D.S.'s mother were contacted after S.R. told the Welfare Department Casselman had touched her. Consequently, due to concerns about the younger girl's safety, Molly Farthing (Farthing), a caseworker, interviewed and videotaped S.S.'s statement. During the interview, S.S. referred to her vagina as "pooty," and her breasts as "titties," using anatomically correct dolls. She referred to the male doll's penis as "dick." S.S. avoided many of the investigator's questions, but did say, "daddy," the defendant, put his "pooty" in her "pooty" and "it hurt." She acted out how Casselman masturbated when showing her his "pooty."

Following the taped interview, a doctor examined S.S. He found a marked dilation of her vaginal vault and her hyman was not intact. The doctor noted these conditions were quite unusual in such a young child.

Casselman first contends the trial court erred in finding the three year old victim competent to testify, and thus abused its discretion by refusing to strike all of her testimony. We disagree.

Before 1990, children under ten years of age were presumed incompetent to testify in court. IC 34-1-14-5. At that time, the statutory presumption of incompetence was overcome when the evidence showed the

court the child witness understood the difference between telling the truth and telling a lie, knew he was under compulsion to tell the truth, and knew what a true statement actually was. *Russell v. State* (1989), Ind., 540 N.E.2d 1222, 1224.

■ In that year, however, the legislature amended the section of IC 34–1–14–5 which had created the incompetency presumption by deleting it from the statute. Now, all children, regardless of age, are presumed competent to testify. P.L. 37–1990, § 20; *Short v. State* (1991), Ind.App., 564 N.E.2d 553, 556. However, a child must still demonstrate to the court he has the knowledge required by the *Russell* court before competency is established. *Short*, 564 N.E.2d at 556.

■ The authority to determine whether a child is competent to testify lies solely within the discretion of the trial court based upon the judge's observation of the child's demeanor and responses to questions posed to him by counsel and the court. In other words, the competency of such witnesses to testify is one of law for the trial court. *Baxter v. State* (1988), Ind., 522 N.E.2d 362, 370, *reh. denied.* To be qualified to testify, a child need not be a model witness, have an infallible memory, or refrain from making inconsistent statements. *Curry v. State* (1969), 252 Ind. 347, 248 N.E.2d 30, 31.

■ A trial court's determination a child is competent to testify will only be reversed for an abuse of discretion. If the record contains evidence from which the trial court reasonably could have inferred the child understood the nature and obligation of the oath, the trial court's ruling must be affirmed. *Watson v. State* (1987), Ind.App., 512 N.E.2d 885, 887.

■ Casselman argues the trial court erred by allowing several of S.S.'s statements to remain in evidence because the inconsistencies in her testimony demonstrated she was not qualified to testify

against him. The court, after determining she was competent, permitted her to testify. When she had concluded, the trial court struck almost all her testimony pursuant to Casselman's motion to strike, except, as the judge stated: "I'll not strike that part of it. 'Molly took her picture and she talked to Molly.' And I'll not strike the part wherein she said, 'That's Arlo Casselman and he did it.' " (R. 154, 175).

The net effect of this sequence of events at trial was

 (a) the trial court determined as a matter of law S.S. was competent to testify, and then, as fact finder,

 (b) determined what parts of her testimony it believed and what parts it did not.

In a bench trial, the judge sits both as judge to rule on matters of law, and as fact finder to decide questions of fact. Here, substantial evidence having probative value supports the trial court's determination of competency. Thus, it did not abuse its discretion by so finding. We find no error here.

■ Also, the State correctly suggests S.S.'s testimony was merely cumulative and created no demonstrative prejudice to Casselman. Casselman has the burden of showing how his substantive rights were prejudiced by the testimony. Only if the error prejudiced Casselman will the cause be reversed. *Watkins v. State* (1984), Ind., 460 N.E.2d 514, 515 *quoting Rebstock v. State* (1983), Ind., 451 N.E.2d 1083, 1086. Our review reveals no prejudice occurred when the trial court struck all but a few of the child's statements. The evidence remaining was merely cumulative.

■ The State agrees some of S.S.'s statements rendered testimony inadmissible as evidence to prove guilt. However, Casselman's cross-examination of S.S. at the hearing to determine the admissibility of S.S.'s videotaped statement pursuant to IC 35–37–4–6 [1] demonstrated her answers

---

1. IC 35–37–4–6, in pertinent part:
 Application of section; "protected person" defined; admissibility of statement or videotape; notice to defendant.

Sec. 6. (a) This section applies to a criminal action under the following:
(1) Sex crimes (IC 35–4–2) . . .

there were consistent with the videotape's contents.

Generally, the admission or exclusion of cumulative evidence is within the sound discretion of the trial court. *Harper v. State* (1985), Ind., 474 N.E.2d 508, 512. We will not reverse a judgment for the admission of cumulative evidence. *Ball v. State* (1980), Ind.App., 406 N.E.2d 305, 309. The videotape contained references to Casselman molesting S.S. Also, Farthing testified she talked with S.S. and taped the session. (R. 169). Casselman's argument on this score is without merit.

■ Next, Casselman contends IC 35–37–4–6, which authorizes the use of videotaped testimony of child witnesses at trial, is unconstitutional. He also asserts the videotaped testimony should not have been admitted into evidence because his right to cross-examine the witness was compromised.

While Casselman's case was pending on appeal, our supreme court decided *Brady v. State* (1991), Ind., 575 N.E.2d 981, a case dealing with the issue of videotaped statements and admissibility. Even though *Brady* dealt with IC 35–37–4–8 and not IC 35–37–4–6, the court's analysis in *Brady* may be appropriately used here.[2] IC 35–37–4–6 defines a "protected person," and the conditions necessary to admit statements videotaped prior to trial. IC 35–37–4–8 delineates the steps required for closed circuit-televising of a protected person's testimony during trial.

In *Brady,* our supreme court held IC 35–37–4–8 satisfied the requirements of the federal confrontation right, but found the operation of subsections (c) and (f)(7) of the statute violated Article I, § 13 of the Indiana Constitution. *Brady,* 575 N.E.2d at 981, 988. The court held IC 35–37–4–8 failed to meet Indiana's face-to-face requirements, because subsection (f)(7) specified that a child who was being videotaped should not be able to observe or hear the defendant, unless the defendant opts to proceed without counsel, which infringed upon the defendant's right to confront the witness against him face to face as trial testimony was given. *Brady,* 575 N.E.2d at 988.

The court further noted merely ensuring a defendant's right to cross-examine the witness did not guarantee Indiana's face-to-face requirement would be met. *Id.* In other words, because IC 35–37–4–8 failed to allow a true face-to-face meeting during trial, of the witness and the defendant, subsections (c) and (f)(7) of the statute violated the Indiana Constitution.

However, unlike those subsections, IC 35–37–4–6 has two face-to-face requirements. *See,* IC 35–37–4–6(d)(2)(A) and (B).

(b) As used in this section, "protected persons" means:
(1) A child who is less than fourteen (14) years of age; . . .
(c) A statement or videotape that:
(1) is made by a person who at the time of trial is a protected person;
(2) concerns an act that is a material element of an offense listed in subsection (a) that was allegedly committed against the person; and
(3) is not otherwise admissible in evidence; is admissible in evidence in a criminal action for an offense listed in subsection (a) if the requirements of subsection (d) are met.
(d) A statement or videotape described in subsection (c) is admissible in evidence in a criminal action listed in subsection (a) if, after notice to the defendant of a hearing and of his right to be present:
(1) the court finds, in a hearing:
(A) conducted outside the presence of the jury; and
(B) attended by the protected person; that the time, content, and circumstances of the statement or videotape and any other evidence provide sufficient indications of reliability;
(2) the protected person:
(A) testifies at the hearing described in subdivision (1); or
(B) was available for face-to-face cross-examination when the statement or videotape was made; and
(3) the protected person is found by the court to be unavailable as a witness because:
(A) a psychiatrist, physician, or psychologist has certified that the participation of the protected person in the trial creates a substantial likelihood of emotional or mental harm to the protected person;
(B) a physician has certified that the protected person is incapable of understanding the nature and obligation of an oath.

2. IC 35–37–4–6 and IC 35–37–4–8 are sister statutes and contain similar provisions and statutory concerns.

Videotaped statements are allowed into evidence when a "protected person" is found to be unavailable as a witness, and the following conditions are met:

(a) the court finds in a hearing outside the presence of the jury which is attended by the protected person that the time, content, and circumstances of the videotape provide sufficient indications of reliability; and

(b) the protected person either testifies at the hearing; or was available for face-to-face cross-examination when the videotape was made.

IC 35–37–4–6(d). No such face-to-face violation exists in IC 35–37–4–8. Thus, we hold the statute to be valid under the Indiana Constitution.

■ In the case at bar, Casselman was never afforded the opportunity of a separate hearing on the videotape admission. Since Casselman's case was before the bench, the judge chose to determine the admissibility of the tape during trial. The State argues because a jury trial was not held, the defendant was not prejudiced. We agree. IC 35–37–4–6 only requires notice to the defendant of a hearing, of his right to be present, the hearing be conducted outside the presence of a jury, the hearing be attended by the protected person, and a finding of sufficient indications of reliability.

The record indicates Casselman received the necessary procedural requirements of IC 35–37–4–6 during a hearing at trial. No jury was present, and S.S., the three year old protected person, testified. However, Casselman argues S.S. was unavailable for cross-examination and any opportunity to cross-examine her was meaningless because her testimony failed to show indications of reliability.

■ Casselman's contention here is misguided. The court, in its discretion, determined S.S. was competent to testify. Therefore, as the record indicates, Casselman was not deprived of his opportunity to cross-examine her. Because S.S. was present at trial, testified, and was available for cross-examination, Casselman was not deprived of his constitutional right to face-to-face confrontation.

Casselman further argues the trial court erred in admitting the videotaped statement of S.S. into evidence, relying on *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482. While his case was pending, our supreme court decided *Modesitt v. State*, Ind., 578 N.E.2d 649 (1991). In *Modesitt*, our supreme court effectively overruled its holding in *Patterson*. However, we need not address law under *Modesitt* because the court held its opinion did not apply retroactively, or to any pending cases. *Id.*, at 654. This includes the instant case.

■ In this light, we review Casselman's argument the trial court improperly admitted S.S.'s previously recorded videotaped statement. He contends the *Patterson* rule is misapplied when invoked to support the admission of out-of-court statements "as a mere substitute for in-court testimony." *Stone v. State* (1989), Ind. App., 536 N.E.2d 534, 536. He argues the State must put the declarant of the prior statement on the witness stand and elicit direct testimony to the facts at issue. *Lewis v. State* (1982), Ind., 440 N.E.2d 1125, 1129–30. The State counters IC 35–37–4–6 contemplated the admission of S.S.'s video, and the statute authorizes such admissions.

The State is correct. IC 35–37–4–6 authorizes the admission of previously recorded videotaped statements. The statutory procedural requirements adequately protected Casselman. *See generally*, Note, *Testimony of Children Via Closed Circuit Television In Indiana: Face (To Television) To Face Confrontation*, 23 Val. U.L.Rev. 455 (1989).

Casselman further contends he was unable to cross-examine S.S. because of her incompetence, and therefore no foundation required by *Patterson* was laid. We disagree. His cross-examination of S.S. allowed the judge to determine S.S.'s limitations by hearing her answers to Casselman's questions. *Miller v. State* (1988), Ind., 531 N.E.2d 466, 471. Once the judge determined she was competent, her competency was no longer at issue. Thereafter,

the judge, acting as fact finder, merely determined what part of her testimony he believed and which parts he did not.

 Next, Casselman alleges the trial court abused its discretion by admitting the video because the tape was of such poor quality, the trier of fact was incapable of judging S.S.'s demeanor when assessing credibility.

The test of admissibility of a videotaped recording is whether the recording taken as a whole, or a crucial segment thereof, is of such poor quality it is likely to lead the fact finder to speculate as to its contents. *Brady v. State* (1989), Ind.App., 540 N.E.2d 59, 66, *rev'd on other grounds, Brady v. State* (1991), Ind., 575 N.E.2d 981.

 After viewing the videotape in question, we have determined as a matter of law the quality of the videotape is not so poor it should not have been admitted. Uniform perfection throughout the recording is not a factor. *Id.* S.S.'s videotaped statement is of adequate sound quality and resolution. S.S.'s statement was taped in a welfare department room with the videotape clearly focused on S.S. and the investigator. The room was well lit and small enough so the activities of both were visible. The tape was of sufficient quality for the trial judge to see S.S.'s demeanor without speculating as to it, that is, how she was acting toward others.

 Casselman finally argues insufficient evidence existed to convict him of molesting S.S. Again, we disagree. We consider only the evidence most favorable to the State. If substantial evidence of probative value exists to support the verdict, we will affirm the conviction. *Meredith v. State* (1987), Ind., 503 N.E.2d 880, 882.

In order to meet its burden in this case, the State must prove beyond a reasonable doubt Casselman, with a child under the age of twelve, performed or submitted to fondling or touching, either of the child or himself, with the intent to arouse or satisfy the sexual desires of either the child or himself. IC 35-42-4-3(b).

Here, we will only examine the circumstantial and direct evidence most favorable to the State, together with all reasonable inferences which can be drawn therefrom. If substantial evidence of probative value supports the conclusion the defendant is guilty beyond a reasonable doubt, the verdict will not be set aside. *Johnson v. State* (1985), Ind., 502 N.E.2d 484.

In the videotape, S.S. stated "daddy" (Casselman) put his "pooty" in her "pooty" and "it hurt". At trial she testified Molly (caseworker) "took her picture and she talked to Molly," and finally said, "That's Arlo Casselman and he did it." In addition, a physician testified as to unusual dilation of S.S.'s vagina, and the caseworker confirmed S.S.'s statements and testimony.

Casselman's conviction was not based solely on the testimony of S.S. A wealth of corroborative direct and circumstantial evidence was presented by the State, including the examining physician's and the welfare investigator's testimony. Substantial evidence having probative value supports the trial court's judgment.

Affirmed.

CHEZEM and RUCKER, JJ., concur.