**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KIRK LYNCH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  40A05-1201-CR-26 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Jon W. Webster, Judge
Cause No.  40C01-0907-FB-262

**November 2, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Kirk Lynch ("Lynch") appeals his convictions for Attempted Child Molesting, as a Class A felony,[1] and Child Solicitation, as a Class C felony.[2] We affirm the conviction for Attempted Child Molesting, vacate the conviction for Child Solicitation, and revise his sentence to twenty-five years imprisonment, with five years suspended to probation.

**Issues**

Lynch presents two issues for review:

I.    Whether there is sufficient evidence to support the convictions; and

II.    Whether he was properly sentenced.

We sua sponte address the issue of whether his multiple convictions violate the double jeopardy prohibitions of the Indiana Constitution.

**Facts and Procedural History**

During the evening hours of July 17, 2009, Rebecca Ruark ("Ruark") was using her personal computer when she noticed that her then twelve-year-old daughter, M.R., had not logged off her MySpace account and had received an instant message from Lynch. Ruark decided to look at Lynch's MySpace profile. One photo appeared to be that of an older teenager while other profile photos revealed Lynch to be a middle-aged man. Also, his MySpace friends seemed to consist entirely of young girls. Concerned, Ruark participated in an instant message conversation with Lynch while pretending to be M.R.

---

[1] Ind. Code §§ 35-41-5-1, 35-42-4-3.

[2] Ind. Code § 35-42-4-6.

2

Lynch messaged Ruark: "I really missed u," "I really wanna see u sometime," "im sure ur a lot prettier in person and I'd love to find out," "I can cum n get ya," and "oh I want you." (State's Ex. 22.) Ruark responded that her parents were working late, but she had made up a story to get out of the house and she could meet Lynch. The instant messaging conversation included the following colloquy:

> bigpop0037[Lynch]: you know wat we gonna do don't ya?
> [M]rocks_your_socks_off [Ruark posing as M.R.]: hang on phone ringing
> bigpop0037: k
> [M]rocks_your_socks_off: what
> bigpop0037: imma bed you baby
> bigpop0037: P

(State's Ex. 22.) Lynch sought assurance from Ruark: "u wont get me in trouble or nuttin right?" (State's Ex. 22.) Lynch then told Ruark to wear a skirt and advised that he would be driving a white Jeep. Ruark told Lynch to meet her at the Comfort Inn in North Vernon.

Meanwhile, Ruark had contacted the North Vernon Police Department. Sergeant Craig Kipper ("Sergeant Kipper") drove toward the Comfort Inn and waited at a nearby car wash. At about 3:00 a.m., Lynch slowly entered and exited a bank parking lot near the Comfort Inn, and then slowly entered the Comfort Inn parking lot and parked in a space provided for registration. Sergeant Kipper activated his emergency lights, approached Lynch's vehicle, and asked him his reason for being there. Lynch claimed to have missed his turn to Seymour. Sergeant Kipper asked Lynch to step out of the vehicle; when Lynch complied, Sergeant Kipper gave Lynch a Miranda advisement. Sergeant Kipper then asked Lynch to come to the police station and discuss his "real reason" for being at the Comfort Inn; Lynch agreed to accompany Sergeant Kipper. (Tr. 585.)

3

During the police interview, Lynch gave various explanations for his presence at the Comfort Inn. At the end of the interview, he was arrested. During the booking process, Lynch told Sergeant Steve Frey: "[I] drove all this way and didn't even get laid." (Tr. 257.)

On November 29, 2011, Lynch was brought to trial before a jury on charges of Attempted Child Molesting, Child Solicitation, and Possession of Marijuana.[3] At the conclusion of the evidence, Lynch was granted a directed verdict as to the possession count. The jury found him guilty of the remaining charges. On January 3, 2012, the trial court imposed upon Lynch a sentence of forty years, with five years suspended to probation, for Attempted Child Molesting and a concurrent sentence of six years for Child Solicitation. Lynch now appeals.

**Discussion and Decision**

I.Sufficiency of the Evidence

In order to convict Lynch of Attempted Child Molesting as a Class A felony, as charged, the State was required to prove beyond a reasonable doubt that Lynch, acting with the culpability required for commission of the crime, engaged in conduct that constituted a substantial step toward commission of the crime. I.C. § 35-41-5-1. Indiana Code section 35-42-4-3 provides, in relevant part:

> A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting … a Class A felony if … it is committed by a person at least twenty-one (21) years of age[.]

---

[3] Ind. Code § 35-48-4-11.

4

In order to convict Lynch of Child Solicitation, as a Class C felony, as charged, the State was required to prove beyond a reasonable doubt that Lynch, a person eighteen years of age or older, knowingly or intentionally solicited a person he believed to be under fourteen years old, by using a computer network, to engage in:

(1)     sexual intercourse;
(2)     deviate sexual conduct; or
(3)     any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person[.]

I.C. § 35-42-4-6.

Lynch presents a consolidated challenge to the sufficiency of the evidence regarding both offenses. He does not deny that he communicated with a person he believed to be M.R. on MySpace; nor does he deny that he committed the overt act of traveling to North Vernon to meet with M.R. Rather, he claims the State failed to prove beyond a reasonable doubt that he knew M.R. was less than fourteen or that he intended to perform a sexual act with M.R.

When reviewing the sufficiency of the evidence to support a conviction, we will consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Id. Because specific intent is a mental state not generally susceptible of direct proof, it may be inferred from all the surrounding circumstances. Hammond v. State, 479 N.E.2d 629, 632 (Ind. Ct. App. 1985).

M.R. testified that she had "talked about [age] directly with Big Pop" and told him that she was twelve years old. (Tr. 361.) She had also uploaded photos of herself as

5

MySpace profile photos; they showed a young teen. During June and July of 2009, Lynch engaged in a series of conversations with M.R. using the MySpace account that listed her age as thirteen.[4]

Lynch also conversed simultaneously with M.R. and her younger cousin, S.S., using the MySpace account belonging to S.S. Lynch's expressed intent included "I want you in bed," and "you should come over and ride me tonight." (State's Ex. 4.) He asked M.R. to drink with him and offered to pay her for work. When he was detained in North Vernon, Lynch alternately claimed he had missed his turn, he was going to apply for a job, and he was on his way to meet a friend in Louisville. After his arrest, Lynch complained to the booking officer that he had driven a long way and "didn't even get laid." (Tr. 257.)

Lynch maintains that he made no explicit demand for sexual activity and his intent as conveyed by one MySpace conversation was to cuddle. He presents a request to reweigh the evidence, which we decline. There is sufficient evidence from which the jury could infer that Lynch knew M.R. was twelve years old, used the Internet to solicit her to engage in sexual activity, and then took a substantial step toward child molesting by driving to a hotel for the purpose of engaging in sexual activity.

## II. Double Jeopardy

Although there is sufficient evidence to support each of Lynch's convictions, our inquiry does not end there. Indiana's Double Jeopardy Clause, embodied in Article 1, Section 14 of the Indiana Constitution, provides: "No person shall be put in jeopardy twice

---

[4] M.R. falsely reported that she was one year older in order to meet a MySpace account requirement.

for the same offense." Our Indiana Supreme Court has concluded that this provision "was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999). In addition to the traditional notion that double jeopardy bars subsequent prosecution, our Supreme Court has construed Indiana's Double Jeopardy Clause as also prohibiting multiple punishments. Id.

In Richardson, our Supreme Court established a two-part test for analyzing double jeopardy claims. Specifically:

> Two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

Id. at 49. The statutory elements and actual evidence tests are separate considerations under the double jeopardy analysis. Id. at 53. Thus, even where the statutory elements define the offense as capable of being committed by disparate acts, the convictions may nonetheless constitute a violation of double jeopardy "if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts." Castillo v. State, 734 N.E.2 299, 303 (Ind. Ct. App. 2000); see also Richardson, 717 N.E.2d at 53.

Here, the State used the fact that Lynch, via the Internet, solicited a person he believed to be M.R. to show that Lynch planned a crime (toward which he took a substantial step) and to establish that he acted with the requisite intent to commit Child Molesting. The solicitation charge was directed to Lynch's communications on July 17, 2009; its commission

was not established by separate and distinct facts. We therefore vacate Lynch's conviction for Child Solicitation.

### III.Sentencing

Upon conviction of a Class A felony, Lynch faced a sentencing range of twenty years to fifty years, with the advisory sentence being thirty years. See Ind. Code § 35-50-2-4. He received a sentence of forty years, with five years suspended.

He now presents two sentencing challenges, first arguing that the trial court abused its discretion by treating one prior conviction as a felony instead of a misdemeanor. According to Lynch, there are indications that his third degree theft conviction in the State of Oregon was a misdemeanor, notwithstanding the two-year probationary term imposed.

"So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on other grounds, 875 N.E.2d 218 (Ind. 2007). This includes the finding of an aggravating circumstance and the omission to find a proffered mitigating circumstance. Id. at 490-91. When imposing a sentence for a felony, the trial court must enter "a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence." Id. at 491.

The trial court's reasons must be supported by the record and must not be improper as a matter of law. Id. However, a trial court's sentencing order may no longer be challenged as reflecting an improper weighing of sentencing factors. Id. A trial court abuses its discretion if its reasons and circumstances for imposing a particular sentence are clearly

8

against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. Hollin v. State, 877 N.E.2d 462, 464 (Ind. 2007).

Lynch did not establish, at the sentencing hearing, that the offense in question was in fact a misdemeanor. He now essentially claims that the trial court misapprehended the degree of the offense and thus necessarily accorded it too much weight. Anglemyer prohibits an appellate claim that an aggravating circumstance was accorded too much weight. We turn to Lynch's second sentencing challenge, that his forty-year sentence for Attempted Child Molesting, with five years suspended to probation, is inappropriate.

Under Indiana Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008). A defendant "must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

As for the nature of the Class A felony offense against a child, it is not the most egregious within the class of offenses. Although Lynch made a substantial step toward his goal of child molesting, he did not make any physical contact with his intended victim. Furthermore, the intended victim did not participate at all in the events of July 17, 2009,

9

lessening the potential for psychological harm. Nonetheless, as the trial court observed, Lynch had carefully planned the offense, communicating with M.R. over time and offering her enticements to leave home and meet him.

As to the character of the offender, Lynch has been diagnosed as a paranoid schizophrenic. He has a limited history of criminal convictions, remote in time and unrelated in character to the instant offenses. However, there was evidence presented at the sentencing hearing suggesting he regularly uses the Internet to engage young teenage girls in sexual or romantic conversations.[5]

In sum, the circumstances of Lynch's crime relative to other Class A felony offenses against children and the remoteness of his criminal history leads us to conclude that a forty-year sentence is inappropriate. We revise his sentence to twenty years imprisonment.

**Conclusion**

There is sufficient evidence that Lynch knew M.R. was twelve years old and sufficient evidence of his intent to engage her in sexual conduct. We affirm his conviction for Attempted Child Molesting. Due to double jeopardy concerns, we remand with instructions to the trial court to vacate his Child Solicitation conviction. Additionally, we revise his sentence to twenty-five years imprisonment, with five years suspended to probation under the

---

[5] Indiana State Police Detective Daniel Elmore, who is assigned to the crimes against children unit, conducted an investigation of Lynch after being provided with information gathered by a team of analysts from the National Center for Missing and Exploited Children. At the time Detective Elmore began his investigation, he did not have knowledge that Lynch was facing criminal charges in the instant matter. Detective Elmore testified that his investigation had revealed the following. A single subscriber with a single password, at Lynch's IP address, had created six profiles on a social networking site called Myyearbook. The IP logs for "Bob Hard," "Kirk L.," Jack M.," Mike Ugwood," "Mike L.," and "Kirk Ly" indicated communications of a sexual or romantic nature with several teenagers, with all but one reporting an age of less than sixteen.

10

original terms specified by the trial court, and instruct the trial court to issue a sentencing order consistent with this revision.

RILEY, J., concurs.

CRONE, J., concurs in part and dissents in part, with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KIRK LYNCH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 40A05-1201-CR-26 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**CRONE, Judge, concurring in part and dissenting in part**

I agree with the majority's resolution of the sufficiency and double jeopardy issues. I respectfully disagree, however, with its determination that Lynch's sentence is inappropriate. Lynch engaged in multiple sexually suggestive online conversations with a twelve-year-old girl, asked her to drink with him, and arranged a sexual encounter at a motel. At the sentencing hearing, the State presented evidence that Lynch was cultivating similar relationships with other adolescent girls. Based on the nature of the offense and Lynch's character, I would affirm his forty-year sentence, which is ten years below the maximum for a class A felony. Ind. Code § 35-50-2-4.